IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMEEL LAWSON : CIVIL ACTION
:
v. :
:
JAMES McGRADY, et al. : No. 11-1030

**MEMORANDUM**

J. WILLIAM DITTER, JR., J. February 7, 2013

Presently before this court is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Jameel Lawson and Respondents' response. Lawson, who is currently incarcerated in the Retreat State Correctional Institution in Hunlock Creek, Pennsylvania, challenges his incarceration for third degree murder and a related firearms charge. For the reasons that follow, the petition will be denied.

**FACTS AND PROCEDURAL HISTORY:**

On October 12, 2006, Lawson entered a negotiated guilty plea to third degree murder and a firearms offense.[1] Pursuant to that plea, Lawson admitted to shooting and killing the victim after a bar fight on December 30, 2005. Lawson also agreed to forego litigating a defense motion to suppress the statement he had given to police after his arrest. (N.T. 5/11/09, at 9-12). In exchange, the Commonwealth agreed, among other

---

[1] The District Attorney summarized the evidence it planned to present at trial during the guilty plea hearing. In doing so, the Commonwealth presented the court with a statement given by Lawson to police after his arrest. In that statement, Lawson told police that the victim approached him at a bar and, after alleging that Lawson owed him money, punched Lawson in the face. (N.T. 10/12/06, at 19). Lawson admitted that he then went home, got a gun, came back and shot the victim five times. Id.

things, to *nolle prosse* a first degree murder charge and the possibility of the death penalty. He was sentenced to consecutive prison terms of 20 to 40 years of imprisonment on the murder charge and 5 to 10 years of imprisonment for the weapons charge. Lawson did not file a direct appeal.

On March 2, 2007, Lawson filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq. Counsel was appointed and subsequently filed an amended petition alleging:

1. his guilty plea was unlawfully induced because trial counsel rendered ineffective assistance by failing to file a motion to suppress inculpatory statements Lawson gave to police detectives; and

2. trial counsel rendered ineffective assistance by failing to file a motion for reconsideration of sentence or a post-sentence motion to withdraw guilty plea.

After holding an evidentiary hearing, the PCRA dismissed Lawson's petition as frivolous. The Superior Court affirmed the denial of post-conviction relief on March 29, 2010. The Pennsylvania Supreme Court denied Lawson's petition for allowance of appeal on September 9, 2010.

On January 25, 2011,² Lawson filed this pro se petition for a federal writ of habeas

---

²This court will presume that Lawson's petition was given to prison authorities on the date on which it was signed, January 25, 2011, and his petition will be deemed filed as of that date. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988) (a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court). Thus, he is within the one-year limitations period of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2244(d)(1)(A) (a petitioner must file a habeas petition within one year of the date on which the judgment of sentence becomes final by the conclusion of direct appeal or the expiration of time for seeking

2

corpus presenting the following issues:

1. counsel was ineffective by improperly advising him that he had no chance of having his suppression motion granted thereby inducing him to plead guilty;

2. counsel was ineffective by failing to adequately explain the consequences of entering a guilty pleas and by telling him that, if he did not take the plea, he had no chance at an evidentiary hearing;

3. counsel was ineffective by advising him that self-defense was not a viable defense in Pennsylvania; and

4. because he did not "actively employ" a firearm, he pled guilty to conduct that was not a crime.

Respondents have filed a response arguing that Lawson's claims are procedurally defaulted and/or meritless.

### **DISCUSSION:**

### **A. Standard of Review**

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

---

such review).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000). In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." 529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000)). The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing Williams, 529 U.S. at 411).

1.  **Voluntariness of Plea**

Lawson claims that his guilty plea was invalid due to ineffective assistance of

counsel. To comport with the Fifth Amendment, a defendant's plea of guilty must be voluntary and intelligent. Boykin v. Alabama, 395 U.S. 238 (1969). The "long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). A guilty plea may be constitutionally infirm if defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges lodged against him. Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). In McCarthy v. United States, 394 U.S. 459, 464-667 (1969), the Supreme Court held that the most efficient method of insuring the intelligent, voluntary nature of a guilty plea is through the colloquy between the trial judge, the defendant, and the defendant's attorney. Such a colloquy should establish that the defendant understood the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offense for which he is charged, and the permissible range of sentences. Boykin, 395 U.S. at 244 n.7.

A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden. Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong

5

presumption of verity." Id. (citing Blackledge v. Allison, 431 U.S. 63, 74-74 (1977)).

The governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, but "questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings." Parke v. Raley, 506 U.S. 20, 35 (1992) (citing Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983)). The presumption applies to findings of fact by the trial and appellate courts of the state, both explicit and implicit. Id. at 36. A habeas petitioner has the burden of rebutting this presumption of correctness by presenting "clear and convincing" evidence to the contrary. See 28 U.S.C. § 2254(e)(1).

In rejecting Lawson's claims regarding the voluntary nature of his plea, the state court stated:

> In the instant case, [Lawson] knowingly, intelligently and voluntarily entered his guilty plea. Prior to accepting the plea, the court conducted an on-the-record-colloquy. [Lawson] stated that he understood all of his trial rights. [Lawson] also stated that he wanted to give up those rights - including the right to litigate pre-trial motions such as a Motion to Suppress - and enter a guilty plea. In so doing, [Lawson] admitted that he killed the decedent and agreed with the Commonwealth's recitation of the facts. These facts established beyond a reasonable doubt that [Lawson] murdered his victim by repeatedly shooting him. [Lawson] also executed a written guilty plea form, which was made part of the record.

Commonwealth v. Lawson, CP-51-CR-0204551-2006, at 3 (Ct. Com. Pl., Sept. 9, 2009).

Review of Lawson's guilty plea colloquy and his evidentiary hearing on collateral review establishes that Lawson understood the nature of the charges against him, the

rights that he would forego by pleading guilty, and the permissible range of sentences he could have imposed upon him.³ See Boykin, 395 U.S. at 244 n.7. However, Lawson challenges the voluntary nature of his facially valid guilty plea arguing that his decision to plead guilty was based upon the ineffective assistance of counsel.

Claims of ineffective assistance of counsel generally are evaluated under the standard announced in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel"

---

³The District Attorney advised the court at the guilty plea hearing as to why he agreed to a negotiated guilty plea in this case:

I have known [the victim] for approximately 20 to 25 years. At one time he was a Commonwealth witness against three major drug rings. [The victim] . . . had a rather violent background and history, not that this in any way excused the manner and fashion in which he was killed. There was one thing that factored as far as [Lawson] was concerned. There were other people in this bar, Your Honor, and everything that [Lawson] said could have been corroborated by people in the bar. There were additional witnesses outside of the bar who heard an argument and did witness this particular shooting.

Due to the number of shots and the fact that there was an adequate time to cool, [Lawson] leaves a place of potential danger, goes home, gets the weapon, comes back and confronts and shoots [the victim] . . . at least twice in the back, I believe it would have been in the best interests of justice to spare Mr. Lawson the exposure to first degree murder, given my knowledge of the victim's background.

****

For those reasons, I made the recommendation again – and, Mr. Lawson, you should know that it was because of your attorney's persuasive power. This was an open and shut first degree case, but based on his intervention in your behalf, both talking to me and my supervisors, we reluctantly accepted this, Your Honor.

(N.T. 10/12/06, at 27-28).

7

> guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. The two- (2-) pronged Strickland test is applicable to petitioners who challenge the effectiveness of counsel after the entry of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 56-59 (1985).

A court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In the context of guilty plea challenges based on claims of ineffective assistance, "the [petitioner] must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" in order to satisfy Strickland's prejudice requirement. Hill, 474 U.S. at 59. Furthermore, "[a] defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995).

### a. Ineffective Assistance of Counsel and Motion to Suppress

Lawson first alleges that trial counsel's insistence that his motion to suppress would be denied induced to plead guilty. In rejecting this claim, the PCRA court provided the following background:

> At the evidentiary hearing, Mr. O'Keefe [trial counsel] testified that he provided [Lawson] with discovery, including his statement to police. Mr. O'Keefe met with [Lawson] on several occasions to discuss his statement and a proposed plea agreement to third degree murder. (N.T., 5/11/09, pp. 4-10). Pursuant to this agreement, the Commonwealth agreed to *nolle prosse* the first degree murder charge - thereby allowing [Lawson] to avoid the possibility of the death penalty - and drug charges, provided [Lawson] pled guilty to third degree murder and weapons charges. (N.T., 5/11/09, p. 4). Mr. O'Keefe told [Lawson] that, in his view he did not think a Motion to Suppress his statement would prove fruitful. Counsel further testified that he believed [Lawson's] statement, if accepted as true by the fact finder hearing his case, "absolutely would have" made out a case for first degree murder. (N.T., 5/11/09, pp. 10-11). Mr. O'Keefe told [Lawson] the only way he would get the benefit of the proposed plea agreement was by withdrawing his Motion to Suppress. (N.T., 5/11/09, p. 12). [Lawson] acknowledged as much during his testimony, but claimed that he still felt forced to plead guilty (N.T., 5/11/09, pp. 25-31).

Commonwealth v. Lawson, CP-51-CR-0204551-2006, at 4 (Ct. Com. Pl., Sept. 9, 2009).

The PCRA court then concluded:

> This court accepted as true trial counsel's testimony. Counsel in no way forced or induced [Lawson] to plead guilty. [Lawson] knowingly, voluntarily and intelligently chose to forego litigating a Motion to Suppress and to plead guilty. [Lawson] did so to avoid the death penalty or a sentence of life imprisonment - the only sentences he could have received if convicted of first degree murder.

Id. Upon review of this claim on collateral review, the Superior Court noted:

> To persuade us counsel's advice was outside the range of competence demanded of criminal attorneys and/or otherwise lacked a reasonable basis, [Lawson] asserts counsel advised him the suppression motion had no chance of success. In this regard, [Lawson] seems to complain that counsel's unequivocal characterization of the motion as destined for failure was improper because counsel could or should have advised [Lawson] that the chances of winning were "poor" or "terrible" but that the motion could succeed if the court believed [Lawson's] account of events. (Citation omitted).

9

> Even accepting [Lawson's] characterization of counsel's advice as being unequivocal, [Lawson] does not demonstrate that such advice was wrong. [Lawson] makes a few bald assertions as to the circumstances under which [Lawson] gave his statements to police but he makes no significant effort to persuade us there was a legal basis for suppression. He sets forth no law regarding suppression and, therefore, does not apply suppression law to the particular facts of his case. It is for [Lawson] to convince us the suppression motion had some merit and, therefore, counsel's advice to the contrary was improper. Because [Lawson] does not demonstrate the suppression motion had merit, he does not persuade us counsel acted unreasonably in advising him the motion would fail. Accordingly, [Lawson] has not shown he was induced into an invalid plea by ineffective counsel.

Commonwealth v. Lawson, No. 1698 EDA 2009, at 3-4 (Pa. Super. March 29, 2010).

I conclude that the state courts' disposition of this matter did not result in a decision that was contrary to federal law, or involved an unreasonable application of, clearly established federal law. As an initial matter, I note that the state courts' determination that defense counsel's testimony was credible is a factual finding entitled to a presumption of correctness absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); see Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (a factual determination made by state courts, whether the court be a trial court or an appellate court, is entitled to a presumption of correctness). A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. See § 2254(d)(2); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The state court held a full evidentiary hearing on this issue and determined that defense

10

counsel had testified truthfully at the PCRA hearing that he had not forced or coerced Lawson into pleading guilty.[4] This conclusion is reasonable.

In any event, Lawson has not satisfied Strickland's prejudice requirement. Hill, 474 U.S. at 59. Lawson has conceded in the state court that his chance of succeeding in a motion to suppress was "poor or even quite poor." See Resp. to Pet., Ex. "B," at 10. If Lawson had chosen to litigate the motion to suppress - a motion which he conceded had an unlikely chance of success - he then faced a trial charged with first-degree murder and the attendant possibility of the death penalty or a sentence of life imprisonment. In light of the Lawson's acknowledgment of the risk involved in rejecting the Commonwealth's plea offer, I conclude that Lawson has failed to establish that he would have pleaded not guilty and gone to trial but for counsel's alleged deficient advice. Parry, 64 F.3d at 118. Accordingly, this claim is denied.

### b. Ineffective Assistance of Counsel and Self-Defense Claim

Lawson next alleges that trial counsel erroneously advised him that a theory of self-defense would be unsuccessful in his case, thereby inducing him to plead guilty. This claim was never presented to the state court and is therefore, unexhausted. A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28

---

[4] I note that Lawson acknowledged at his PCRA hearing that counsel had advised him that he was giving up his right to challenge the admission of the statement he made to police if he decided to plead guilty. (N.T. 5/11/09, at 26-27).

U.S.C. § 2254. "The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)). A petitioner typically exhausts his federal claims by fairly presenting each claim at each stage of the state's established review process. Villot v. Varner, 373 F.3d 327, 337 (3d Cir. 2004); see also Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992) ("the same method of legal analysis must be available to the state court as will be employed by the federal court"). The habeas corpus petitioner has the burden of proving exhaustion of all available state remedies. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254). Because Lawson's claim of ineffective assistance of counsel with regard to a self-defense claim was not presented to the state courts, it is unexhausted.

I will, however, overlook Lawson's failure to exhaust state remedies for his self-defense claim because a return to state court would be futile due to "an absence of available state corrective process." Lines, 208 F.3d at 162. The only way in which Lawson could present this claim in the state court at this time is by filing a second PCRA petition. See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001). However, any such petition would be time-barred by the PCRA's statute of limitations.[5]

---

[5] Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat.

12

Lawson is considered to have procedurally defaulted his claim because state procedural rules bar him from seeking further relief in state courts. Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001). The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review. Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir. 2002). The Supreme Court has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Werts, 228 F.3d at 192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 193 (citing Carrier, 477 U.S. at 494). This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. Id.

---

Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)). For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review. 42 Pa. Cons. Stat. Ann. § 9545(b)(3). Lawson's conviction became final in 2006.

In the alternative, if a petitioner fails to demonstrate cause and prejudice for the default, a federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 748. In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496). To satisfy the "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327.

Lawson has not provided this court with an explanation for his failure to present this claim to the state courts. As a result, he has not shown cause to excuse his procedural default.[6] Carrier, 477 U.S. at 488. Moreover, because Lawson makes no colorable showing of innocence, he has failed to demonstrate that a miscarriage of justice will result if his claims are not reviewed. Coleman, 501 U.S. at 748; Schlup, 513 U.S. at 327 (citing Carrier, 477 U.S. at 496). Consequently, federal review of this claim is foreclosed.

However, if I were to assume that Lawson had properly exhausted this claim, I would conclude that it is without merit. The issue of a self-defense theory was explored

---

[6]Because no cause has been demonstrated, the court need not address the prejudice requirement. Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for default, the court need not consider whether he also suffered actual prejudice).

at Lawson's guilty plea hearing.[7] At his guilty plea hearing, the trial court first questioned Lawson regarding his knowledge of the proceedings:

> THE COURT: Then let me go back and ask this question again. You understand if you accept this plea and plead guilty, you are giving up your right to a trial, and you are giving up once and for all your opportunity to present any defense you might have, including self-defense. Do you understand that?
>
> LAWSON: Yes

(N.T. 10/12/06, at 14). The trial court then noted:

> I have read the statement that you gave. Now, again, you have an absolute right to go to trial. You have an absolute right to raise any defense you want to raise, and nobody knows what a factfinder might ultimately decide. The Commonwealth has the burden of proving every element of the offense beyond a reasonable doubt. But I can tell you this, having read your statement. If you had elected to go to trial, or if you do elect to go to trial on this murder case, and if that statement of yours is introduced to the judge or jury hearing the case, and if it's accepted as true – in other words, if the judge or jury hearing the case says "We accept what Jamell [sic] Lawson said about what happened and how this happened" – then if that judge or jury applies the law, you will not be able to raise a reasonable doubt that this was self-defense. It's far more likely, in my judgment, that if you go to trial in this case, and this statement comes in, as well as the other evidence, there is a lot better chance that this would wind up as a first degree case than that you would get anything out of your self-defense claim. That doesn't mean you can't do that. That doesn't mean that a judge or jury doesn't have the right to do anything it wants to do with the evidence, but I am giving you my opinion at this point, based on what I now know the evidence would be if the case went to trial.

---

[7] "When evidence of self-defense arises from any source, the Commonwealth must disprove self-defense beyond a reasonable doubt." Commonwealth v. Stonehouse, 555 A.2d 772, 781 (Pa. 1989) (citation omitted). "To sustain that burden, the Commonwealth must prove that 1) the defendant did not reasonably believe that he or she was in danger of death or serious bodily injury; 2) the defendant provoked the use of force; or 3) the defendant had a duty to retreat and retreat was possible with complete safety." Id.

15

(N.T. 10/12/06, at 23-24).

Lawson's claim that his counsel provided ineffective assistance by convincing him to forego a theory of self-defense in favor of a guilty plea is meritless. Lawson told police that he left the victim at a bar, went home to retrieve a gun and returned to the bar to shoot the victim five times. Any reasonable belief that Lawson was in danger of death or serious bodily injury would have dissipated after Lawson left the bar. Consequently, trial counsel was not ineffective for advising Lawson that he was unlikely to prevail on a theory of self-defense at trial. This claim is denied.

### c.     Ineffective Assistance of Counsel for Failure to Appeal

Lawson next argues that defense counsel was ineffective for failing to file a motion to withdraw guilty or a motion to modify sentence after Lawson had requested that he do so. This claim was presented to the PCRA court and introduced in Lawson's statement of issues in his brief on collateral appeal to the Pennsylvania Superior Court. However, the issue was never addressed in the argument section of his counseled brief and the Superior Court never addressed this claim. As a result, this claim of ineffective assistance of counsel was not "fairly presented" to the state courts, Evans, 959 F.2d at 1231, and is procedurally defaulted for the reasons presented, *supra*. See 28 U.S.C. § 2254; Carrier, 477 U.S. at 488.

Notwithstanding, I conclude that the claim is meritless. In determining that this claim was meritless, the PCRA court concluded:

16

> Mr. O'Keefe testified that he advised [Lawson] of his post-sentence rights, and [Lawson] never asked him to file either a Motion to Withdraw Guilty Plea or a Motion to Modify Sentence. Moreover, [Lawson] testified that he sent his request to the Defender Association, not Mr. O'Keefe. Since [Lawson] failed to notify trial counsel of his desire to file post-sentence motions, trial counsel was not ineffective.

Commonwealth v. Lawson, CP-51-CR-0204551-2006, at 5 (Ct. Com. Pl., Sept. 9, 2009).

Clearly, defense counsel cannot be deemed ineffective for failing to file a motion to withdraw a guilty plea or modify sentence if counsel if Lawson never asked him to file such a motion.[8] Lawson's claim is denied.

### d. Failure to Discharge a Firearm

Lawson next argues that there was insufficient evidence underlying the firearms charge to which he pled guilty.[9] More specifically, he alleges that there was no proof that

---

[8]Lawson testified as follows at his PCRA hearing:
COUNSEL: Mr. Lawson, after the judge sentenced you, did you ever, yourself, attempt to communicate with Mr. O'Keefe and request him to file anything, be it a motion to reconsider sentence, be it a motion to withdraw your plea, or be it an appeal? Did you ever -
LAWSON: The only thing that I did after the guilty plea was entered, I sat here and I wrote my lawyer. I wrote the Public Defender's officer and I wrote them a reconsideration. I didn't know too much about the appeal. I had to do some further investigation on the appeal. That's way I asked them before the year expired, I filed a PCRA.
COUNSEL: My question though was whether you sent any type of communication to Mr. O'Keefe. Did you -
LAWSON: I wrote my letter, that was it.
COUNSEL: – did you write a letter to Mr. O'Keefe?
LAWSON: No, I wrote a letter to the Public Defender's office.
(N.T. 5/11/12, 33).

[9]Although not presented as a claim on the "Form for Use in Application for Habeas Corpus Under 28 U.S.C. § 2254," Lawson details this claim in his attached "Memorandum."

17

he engaged in "active employment" of a firearm under Bailey v. United States, 516 U.S. 137 (1995). As Respondents point out, this claim was never presented to the state courts and for the reasons presented, *supra*, is unexhausted and procedurally defaulted. 28 U.S.C. § 2254; Carrier, 477 U.S. at 488. In any event, I also conclude that the claim is meritless. As an initial matter, I note that Bailey, a case involving a federal firearms statute, is inapplicable to Lawson because he was charged, convicted and sentenced under Pennsylvania law. In addition, Lawson pled guilty to shooting the victim multiple times. There were various witnesses to the shooting. Rather than arguing that he never committed the shooting, Lawson's only defense in the instant action is that the shooting was done in self-defense. Clearly, under the circumstances presented herein, whether there was "active employment" of his firearm becomes a moot point. This claim is denied.

## **CONCLUSION:**

After close and objective review of the arguments and evidence, I conclude that Lawson's petition for writ of habeas corpus is meritless. Accordingly, Lawson's petition will be denied.

Similarly, because Lawson's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter. See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference

18

to the state court record") (citations omitted).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMEEL LAWSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES McGRADY, et al. | : | No. 11-1030 |

# **O R D E R**

AND NOW, this 7th day of February, 2013, upon consideration of the Petition for Writ of Habeas Corpus and the response thereto, **I HEREBY ORDER** that for the reasons set forth above, the Petition is **DENIED with prejudice and without a hearing.**

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued pursuant to 28 U.S.C. § 2253 because petitioner has failed to make a substantial showing of denial of a constitutional right.

The Clerk of Court is hereby directed to mark this case closed.

                                               s/J.William Ditter, Jr.
                                               J. WILLIAM DITTER, JR., J.